UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDREA BROWN,
on behalf of C.M.B,

                        Plaintiff,

              -vs-                                  13-CV-1073-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

APPEARANCES:       LAW OFFICES OF KENNETH HILLER
                                (ELIZABETH ANN HAUNGS, ESQ., of Counsel)
                                Amherst, New York
                                Attorneys for Plaintiff

                                WILLIAM J. HOCHUL, JR.
                                United States Attorney, Western District of New York
                                (ELIZABETH ROTHSTEIN, AUSA, of Counsel)
                                United States Attorney's Office
                                Buffalo, New York
                                Attorneys for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 2, 2014.  Item 12.

Plaintiff Andrea Brown initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits made on behalf of her minor child, C.M.B., and has moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Item 8. For the following reasons, plaintiff's motion is denied.

## BACKGROUND

Plaintiff filed an application on January 5, 2011 (with a protective filing date of December 8, 2010), for SSI benefits on behalf of C.M.B., her eight-year-old son, alleging disability due to attention deficit hyperactive disorder (ADHD) and emotional disturbance (Tr. 72-77, 87, 91).[1] Upon denial of the application at the initial level of agency review (Tr. 45-49), plaintiff filed a timely request for a hearing which was held on April 28, 2011, before Administrative Law Judge ("ALJ") Grenville W. Harrop, Jr. (Tr. 24-40). Plaintiff and C.M.B. appeared and testified at the hearing, without legal representation.

In a decision dated July 25, 2012, ALJ Harrop found that C.M.B. was not disabled within the meaning of the Social Security Act (Tr. 9-20). Following the sequential evaluation process for determining disability for children, as outlined in the Social Security regulations at 20 C.F.R. § 416.924, the ALJ determined that C.M.B.'s ADHD, while severe, did not meet, medically equal, or functionally equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), necessary for a finding of eligibility for child's SSI benefits. *Id.*

Plaintiff filed a timely administrative appeal (Tr. 7), and on August 29, 2013, the ALJ's decision became the final determination of the Commissioner when the Appeals Council denied plaintiff's request for review (Tr. 1-6). Plaintiff then filed this action on

---

[1]Citations preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 6).

October 25, 2013, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Item 1.

In support of her motion for judgment on the pleadings, plaintiff contends that the ALJ failed to consider C.M.B.'s mood disorders (conduct disorder and depressive disorder) as severe impairments at step two of the sequential evaluation, and failed to properly evaluate whether C.M.B.'s ADHD met, medically equaled, or functionally equaled Listing 112.11.  *See* Items 8-1, 11.  The Commissioner responds that the ALJ's determination is supported by substantial evidence and should be affirmed.  *See* Item 10.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012), *cert. denied,* 133 S.Ct. 2881 (2013). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, ___ F. App'x ___, 2013 WL 4750284, at *3 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II. Standards for Determining Eligibility for Child's Disability Benefits

Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  The regulations set forth a three-step sequential process for the ALJ to follow in evaluating SSI claims for minor children.  *See* 20 C.F.R. § 416.924.  "[T]he burden of proof rests on the claimant at each of the three steps."  *Jonson v. Colvin*, 2013 WL 1314781, at *2 (W.D.Pa. Mar. 28, 2013) (internal alterations and citation omitted).

Step one of the process requires the ALJ to determine whether the child has engaged in substantial gainful activity.  If so, the child is ineligible for SSI benefits.  20 C.F.R. § 416.924(b).  If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from an impairment or combination of impairments that cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c).  If the child's impairment or combination of impairments is severe, the ALJ then must determine at step three whether the level of severity meets, medically equals, or functionally equals the criteria of an impairment found in the Listings.  If the impairment meets or medically equals a listed impairment, the claimant will be found to be disabled.  20 C.F.R. § 416.924(d)(1).  If the ALJ determines that the child's impairment or combination of impairments does not meet or medically equal any listing, the ALJ must then assess whether the child's impairment(s) "functionally equal the listings" by considering how the child functions in terms of the following six "domains:"

   (i) acquiring and using information;

   (ii) attending and completing tasks;

   (iii) interacting and relating with others;

   (iv) moving about and manipulating objects;

    (v) caring for oneself; and

    (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains, or an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); see Ramos v. Barnhart, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). A "marked" limitation exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

    In this case, the ALJ determined at step one of the three-step sequential evaluation that C.M.B. was a school-age child during the relevant period, and had not engaged in substantial gainful activity (Tr. 15). At step two, the ALJ found that C.M.B.'s ADHD constituted a "severe" impairment, based on medical records indicating diagnosis and treatment with prescription medications; limitations of his ability to pay attention and follow directions; and concerns about his aggressive and defiant behavior (*id.*). The ALJ also referred to school records showing C.M.B.'s placement in a special education program with accommodations to account for his difficulties maintaining focus and behaving appropriately (*id.*).

    At step three, the ALJ found that C.M.B. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled an impairment contained in the Listings. In making this finding, the ALJ considered the medical evidence, educational records, and testimony regarding the degree of C.M.B.'s limitations in each of

the six functional domains, and concluded that C.M.B. had marked limitations in the domain of interacting and relating with others; less than marked limitations in the domains of acquiring and using information, and attending and completing tasks; and no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being (Tr. 15-20). Accordingly, the ALJ found that C.M.B. did not have an impairment or combination of impairments that functionally equaled an impairment in the Listings, and consequently, C.M.B. was not disabled during the period at issue from December 8, 2010, the date his SSI application was filed[2] to July 25, 2012, the date of the ALJ's decision[3] (Tr. 20).

### III. Plaintiff's Motion

#### A. The ALJ Failed To Consider The Severity of C.M.B.'s Mood Disorders

Plaintiff initially contends that the ALJ improperly failed to consider C.M.B.'s conduct disorder and depressive disorder as "severe" impairments at step two of the sequential evaluation. According to plaintiff, the medical evidence shows that C.M.B. was diagnosed with these impairments as early as 2007, and there is ample evidence to support a finding that these impairments have lasted longer than 12 months and have caused more than minimal functional limitations throughout the relevant period.

Social Security Ruling ("SSR") 96–3p explains that, for individuals under age 18 claiming disability benefits under title XVI, the evaluation of whether an impairment or

---

[2] SSI benefits cannot be paid any earlier than the month after the month in which the application is filed. *See* 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

[3] An application remains in effect until the hearing decision is issued. *See* 20 C.F.R. § 416.330.

combination of impairments is "severe" at step two requires an assessment of the functionally limiting effects of the impairment(s) on the child's ability to do "age-appropriate activities" or "to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96–3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); see *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208–09 (W.D.N.Y. 2005). As indicated above, it is the claimant's burden to establish that his or her impairment or combination of impairments has caused more than minimal limitations of functioning in this regard.

In attempting to meet this burden here, plaintiff specifically refers to Childhood Disability Reports completed in December 2011 by Dr. Ronald A. Cooke, C.M.B.'s child psychologist, and Dr. Tej N. Kaul, C.M.B.'s pediatrician, indicating diagnoses of ADHD, conduct disorder (childhood onset), and depressive disorder, not otherwise specified (NOS) (Tr. 359-61). Dr. Cooke noted further that C.M.B. was exposed to domestic violence between his parents; he had a history of enuresis/encopresis and lying and stealing; his ADHD symptoms began at approximately 5 years old; his fine/gross motor skills and social/emotional skills were that of a six-year-old; and his sensory abilities, communication skills, and cognitive skills were age-appropriate (Tr. 360-61). Dr. Kaul's report indicated a diagnosis of ADHD/depressive disorder, and noted that ADHD had been present since 2008 (Tr. 380). Dr. Kaul further noted that C.M.B. had age-appropriate functioning and behavior in all areas (fine/gross motor skills, sensory abilities, communication skills, cognitive skills, and social/emotional skills) (Tr. 380).

Contrary to plaintiff's assessment, the court finds very little information in these reports to support a finding that C.M.B.'s ADHD and mood disorders had the combined effect of causing "more than minimal" limitation in his ability to function independently,

appropriately, and effectively in an age-appropriate manner during the period between December 8, 2010 and July 25, 2012. Indeed, further review of the record reveals that during the relevant period, Dr. Cooke repeatedly reported C.M.B.'s attitude as "cooperative" and his mood as "OK" (*see* Tr. 362, 364, 372, 374, 378), and reported depressive thought content on only two occasions (*see* Tr. 368, 376). Dr. Cooke also repeatedly assessed Global Assessment of Functioning ("GAF") scores of 60 to 65[4] during the relevant period, indicating only mild to moderate difficulties in social or school functioning (*see* Tr. 363, 365, 367, 371, 373, 375, 377, 379).

Significantly, and as indicated above, the ALJ provided a thorough discussion of the medical evidence, educational records, and hearing testimony to support his assessment of C.M.B.'s limitations in the six domains of functioning during the relevant period, and plaintiff has failed to identify any evidence of record to support the claim that C.M.B.'s impairments caused functional limitations traceable to either conduct disorder or depressive disorder beyond those recognized by the ALJ. The ALJ noted his reliance on the functional equivalence evaluation by state agency consultative reviewing psychologist T. Andrews, Ph.D., dated March 22, 2011 (Tr. 346-53), who reviewed the available medical and educational records and found "less than marked" limitation in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself, and no limitations in the domains of moving about and

---

[4]GAF is a scale from 0 to 100 that may be used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning. A GAF score of 61–70 indicates a person with some mild symptoms or some difficulty in social, occupational, or school functioning, but who is generally functioning pretty well and has some meaningful interpersonal relationships. *See* Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

manipulating objects, and health and physical well-being (Tr. 350-51).  Dr. Andrews specifically referenced reports from Dr. Cooke (discussed above), as well as educational records from the 2010-11 school year, when C.M.B. was a third grade student in a regular classroom setting receiving special education consultant teacher and counseling services (Tr. 114-21).  Based on this review, Dr. Andrews concluded that C.M.B.'s diagnosed impairments, considered singly or in combination, were severe, but did not meet, medically equal, or functionally equal an impairment in the Listings (Tr. 348).  As the only expert of record who specifically assessed whether C.M.B.'s impairments met or equaled a listed impairment, it was appropriate for the ALJ to rely on Dr. Andrew's consultative report.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir.  2012) (report of state agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record; citing 20 C.F.R. § 416.927(e)(2)(i)).

In any event, any claimed error at step two of the analysis in this case must be considered harmless, since the ALJ found that C.M.B.'s ADHD met the severity requirement, allowing plaintiff's claim to proceed through the sequential evaluation process to a full functional equivalence determination.  *See v. Webb v. Colvin*, 2014 WL 3389369, at *5 (W.D.N.Y. July 10, 2014) (citing *Stanton v. Astrue*, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010); *see also Jordan ex rel. M.E.J. v. Colvin*, 2013 WL 6506566, at *5 (N.D.N.Y. Dec. 12, 2013) (ALJ's failure to consider impairment as severe deemed harmless error where evaluation proceeded through full functional equivalence analysis).

Accordingly, plaintiff is not entitled to remand based on the ALJ's failure to properly consider the severity of C.M.B.'s conduct disorder and depressive disorder.

>    B.   **The ALJ Failed to Properly Evaluate Whether C.M.B.'s ADHD Impairment Met, Medically Equaled, or Functionally Equaled Listing 112.11**

Listing 112.11 (Attention Deficit Hyperactivity Disorder) requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, resulting in at least two of the following: marked impairment in age-appropriate cognitive/communicative function; marked impairment in age-appropriate social functioning; marked impairment in age-appropriate personal functioning; or marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, § 112.11(A), (B) (referencing § 112.02(B)(2)). Plaintiff contends that the ALJ failed to provide supporting rationale for his finding that C.M.B.'s impairments were not of Listing severity, and failed to even mention whether he considered the criteria for Listing 112.11.

The Second Circuit has made clear that lack of specificity in the ALJ's Listing analysis does not, in and of itself, necessitate remand; the ALJ need not spell out his analysis or rationale with great detail, as long as the Court can clearly discern that there is substantial evidence in the record to support his conclusion. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (*cited in Hairston ex rel. S.N. v. Commissioner of Social Sec.*, ___F. Supp. 3d___, 2014 WL 5139293, at *14 (S.D.N.Y. Oct. 14, 2014)); *see also Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (absence of express rationale for ALJ's decision on Listings does not require remand so long as reviewing court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."); *Bonet ex rel. T.B.*

*v. Astrue*, 2012 WL 3544830, at *2 (N.D.N.Y. Aug. 16, 2012 (despite brevity of listing analysis, ALJ's thorough assessment of functional equivalency provides substantial support for determination that claimant's impairments did not meet or medically equal ADHD listing).

As outlined above, the ALJ's written determination in this case provides ample discussion of the evidence pertaining to C.M.B.'s functional limitations due to ADHD to allow the court to discern the rationale for finding that the impairment did not meet, medically equal, or functionally equal Listing 112.11.  Although the ALJ did not specifically refer to the Listing criteria, his thorough discussion of the medical evidence, educational records, and hearing testimony reveals substantial support for his assessment that C.M.B. had marked limitations in only one domain of functioning – interacting and relating with others, which can be logically equated to the Listing criterion of "age-appropriate social functioning."  *Compare* 20 C.F.R. § 416.926a(i), *with* 20 C.F.R. pt. 404, subpart P., app. 1, §§ 112.00(C)(2)(b), (3), 112.02(B)(2)(b); *see Bonet*, 2012 WL 3544830, at *2.  Similarly, the ALJ's findings of "less than marked" or "no" limitations in the other five functional equivalence domains are instructive with regard to assessing the level of C.M.B.'s impairments in the areas of age-appropriate cognitive/communicative functioning, personal functioning, and maintaining concentration, persistence, or pace.  *See Bonet*, 2012 WL 3544830, at *3; *see also Johnson ex rel. J.K.J. v. Colvin*, 2013 WL 3216064, at *6 (N.D.Okla. June 24, 2013) ("Although the six domains of functioning analyzed and discussed by the ALJ are not the same as the "B criteria" of [Listing 112.11], they do overlap and the same information in the record is considered to make the relevant findings.").

Furthermore, the court's review of the record reveals no medical reports, treatment notes, or diagnostic test results to support findings of marked inattention, marked impulsiveness, and marked hyperactivity, as required under § 112.11(A). Rather, Dr. Cooke's treatment notes reflect that C.M.B.'s concentration was generally "fair" to "marginal" (*see* Tr. 362, 364, 368, 372, 374, 376, 378), and Dr. Andrews' review of the medical evidence indicated C.M.B.'s "less than marked" limitation in attending and completing tasks, as well as an overall finding that C.M.B.'s impairments did not meet, medically equal, or functionally equal a listed impairment (*see* Tr. 348, 350). Considering the evidence as a whole, and the ALJ's supported findings of functional equivalence, the court is confident that a more detailed analysis in light of the specific § 112.11 criteria would not have changed the outcome of the case, and the ALJ's failure to provide supporting rationale for his finding that C.M.B.'s impairments were not of Listing severity must be considered harmless.

Based upon this review of the record, the court finds that the ALJ's decision in this case was grounded on proper application of the law and regulations, and is supported by substantial evidence. Accordingly, the Commissioner's final determination must be upheld.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 8) is denied, and the case is dismissed. The Clerk is directed to enter judgment in favor of the Commissioner, and close the case.

So ordered.

                                              \s\ John T. Curtin
                                                  JOHN T. CURTIN
                                       United States District Judge

Dated:   December 17, 2014